# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALLAS TAYLOR ODENWELDER,<br><br>Plaintiff,<br><br>v.<br><br>MICHELLE KING,<br>Acting Commissioner of Social Security,[1]<br><br>Defendant.<br>_____/ | Case No. 1:24-cv-00912-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Dallas Taylor Odenwelder ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   FACTUAL BACKGROUND

On January 26, 2020, Plaintiff protectively applied for DIB and SSI payments, alleging she

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle King should be substituted for Carolyn Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

became disabled on October 7, 2018, due to multilevel degenerative disc disease, "bilateral pars defect," spondylosis, osteoarthritis, major depression, anxiety, nerve damage, back pain, and cyclic vomiting syndrome. (Administrative Record ("AR") 17, 79, 80, 96, 113, 114, 115, 136, 137, 138, 168, 313, 360.) Plaintiff was born on February 14, 1993, and was 25 years old on the alleged disability onset date. (AR 26, 79, 95, 113, 136, 313, 360.) Plaintiff has a high school education, and previously worked as a customer complaint clerk. (AR 26, 51, 72, 92, 108, 133, 156, 318, 324.)

## A. Relevant Medical Evidence[3]

In May 2018, Plaintiff presented complaining of chronic low back pain radiating to her upper spine. (AR 418–21.) She reported currently using muscle relaxers, water exercises, TENS unit, and massage therapy, and that facet injections did not provide much relief. (AR 418.) On examination, Plaintiff had some tenderness to palpation in her lumbar spine, with a negative straight leg raising test, normal strength, and full range of motion. (AR 420.)

Plaintiff reported in August 2018 that her back pain was getting worse and interfering with her ability to ambulate. (AR 411.) She reported that she exercises and walks her dog for 20 minutes. (AR 411.) In September 2018, Plaintiff reported to a psychologist that she was regularly walking three times per day for 30 minutes at a time. (AR 409.)

That next month, Plaintiff complained of low back pain rated a 10/10 and leg instability. (AR 408–409.) She reported that her pain is relieved "minimally" with a muscle relaxer, and that trigger point injections and physical therapy were not helpful. (AR 408.) On examination, Plaintiff had a normal gait, back pain tenderness with palpation, bilaterally decreased range of motion, with negative straight leg raising test, normal strength, normal sensation, and normal mental status. (AR 408–409.) An October 2018 MRI of Plaintiff's lumbar spine showed mild degenerative disc disease and "pars defect of L5-S1." (AR 462–65.)

In October 2019, Plaintiff presented to the emergency department complaining of lower back pain with diarrhea, nausea, and vomiting. (AR 2220–30.) She exhibited tenderness in her low back

---

[3] As Plaintiff's assertion of error is limited to the ALJ's consideration of Plaintiff's subjective complaints, only evidence relevant to this argument is set forth below.

2

and was prescribed Norco. (AR 2221–22.) She also underwent a lumbar steroid injection that month. (AR 515–16.)

At a follow up appointment in December 2019, Plaintiff reported that the injection "did not relieve any pain." (AR 517.) On examination, Plaintiff exhibited limited range of motion in her lumbar region, antalgic gait, tenderness in her lumbar spine, with normal strength, sensation, and reflexes. (AR 518–19.) She underwent medial branch blocks that same month and reported no pain relief. (AR 521–23.) Opioid therapy was prescribed. (AR 524–25.) In January 2020, Plaintiff's opioid medications were increased. (AR 528.)

Plaintiff presented complaining of lower back pain in April 2020. (AR 670–73.) On examination, Plaintiff had normal gait, abnormal range of motion with pain, positive Patrick Test, positive Reverse Thomas test, 4/5 strength in her ankles and hips, and otherwise normal strength and sensation. (AR 671–72.) She was assessed with lumbar spondylosis and neuropathy. (AR 671–72.) In May 2020, Plaintiff attended a follow up appointment (AR 665–67.) Her physical examination was the same as before, and she was given refills of her opiate medication. (AR 666–67.) EMG and NCV tests were normal, so small fiber neuropathy was suggested. (AR 667, 680.) A nerve biopsy was performed in July 2020, which showed severe length-dependent small fiber neuropathy. (AR 621, 663.)

That same month, Plaintiff was discharged from physical therapy. It was noted that she "has been seen for a total of 8 visits for physical therapy with two cancellations and two no shows." (AR 607.) She still complained of severe (8-9/10) low back pain but reported she can perform activities of daily living and "to perform tile work at her house on weekends despite complaints of low back pain." (AR 607.) It was further noted that Plaintiff was "somewhat non-compliant with home exercise program instructions." (AR 607.) She demonstrated "fair to poor posture with kyphotic decreased lumbar lordosis" and "tenderness to L5-S3 area with over pressure." (AR 607.)

In August 2020, Plaintiff presented for an internal medicine evaluation with Steven Stolz, M.D. (AR 621–26.) On examination, Plaintiff demonstrated some reduced range of motion in her back, with no tenderness to palpation. (AR 624.) Her straight leg raising test was negative, and her motor strength, sensation, and reflexes were normal. (AR 624–25.) Plaintiff underwent a

3

1   transforaminal epidural injection in September 2020.  (AR 655.)

2           Plaintiff presented to the emergency department complaining of nausea, vomiting, and
3   bilateral lower back pain in October 2020.  (AR 724.)  Her physical examination was normal.  (AR
4   725.)

5           In December 2020, Plaintiff continued to complain of severe back pain.  (AR 651–53.)  On
6   examination, she had normal gait, abnormal range of motion with pain, positive Patrick Test, positive
7   Reverse Thomas test, 4/5 strength in her ankles and hips, and otherwise normal strength and
8   sensation.  (AR 652–53.)  She reported that Norco did not help her pain and was given Tramadol to
9   try.  (AR 653.)  In January 2021, Plaintiff underwent medial branch blocks due to lumbar
10  spondylosis.  (AR 645–46.)  At a follow up appointment, she reported having three hospital stays
11  since her last office visit due to back pain.  (AR 649.)  A higher dose of Norco was prescribed, due
12  to side effects of Tramadol.  (AR 649.)

13          In February 2021, Plaintiff was assessed with lumbar radiculopathy and an MRI was ordered.
14  (AR 642–43.)  She had been seeking a referral for an orthopedic surgeon due to her increasing back
15  pain, resulting in falls.  (AR 643.)  That same month, Plaintiff presented to the emergency department
16  with cyclical vomiting.  (AR 692.)  It was noted she is ambulatory but uses a cane due to left
17  extremity weakness.  (AR 693–96.)  An MRI of Plaintiff's lumbar spine performed in February 2021
18  showed "[o]verall mild degenerative change in the lumbar spine most notably with grade 1 isthmic
19  spondylolisthesis and other degenerative change at L5-S1 with mild to moderate left and minimal
20  right foraminal narrowing."  (AR 769–70.)

21          Plaintiff again presented to the emergency department in March 2021, complaining of
22  cyclical vomiting and back pain.  (AR 1122–23.)  On examination, Plaintiff had normal gait and
23  strength.  (AR 1125–26.)  Another MRI performed that month showed "[b]ilateral spondylolysis at
24  L5 with mild spondylolisthesis of L5 on S1," "[m]ild retrolisthesis at L4-5," "[l]umbar spondylosis
25  without central spinal stenosis," and "mild to moderate [n]arrowing of the right L4-5 and bilateral
26  L5-S1 neural foramina."  (AR 2063–64.)

27          In July 2021, Plaintiff reported to the emergency department caregivers that she "is trying to
28  get on disability for back pain."  (AR 1385.)  It was noted that despite reporting 8/10 back pain, she

"is ambulating well and freely" and "moves without evident discomfort." (AR 1385.)

Plaintiff established care with a primary care physician in December 2021. (AR 1934–37.) A history of "chronic pain secondary to small nerve neuropathy of the left arm [and] left leg" was noted. (AR 1934–36.) She complained of pain and weakness in her left leg. (AR 1934.) On examination, diffuse tenderness throughout Plaintiff's left leg was observed, as well as reduced (4/5) strength. (AR 1936.) Her gait was antalgic, and she was "[u]nable to heel walk or tip toe walk due to weakness and pain." (AR 1936.)

In July 2022, Plaintiff complained to her primary care physician of low back pain on the left side radiating down the left leg that is made worse by lifting, bending, sitting, standing, or lying down too long. (AR 1973.) On examination, she had reduced range of motion with pain, positive Kemps test, positive straight leg raising test, hypertonic muscles in the thoracolumbar and lumbar paraspinals, and "intersegmental dysfunction" at S1, and point tenderness at L5. (AR 1973.)

Plaintiff requested a referral to a back pain specialist in November 2022, and indicated that she is "unable to dress herself" and "needs help with everything." (AR 1983.) On examination, Plaintiff exhibited pain with lumbar flexion, tenderness to palpation, and a positive straight leg raising test, with intact strength. (AR 1985.)

In March 2023, Plaintiff presented to the emergency department complaining of abdominal pain, nausea, and vomiting. (AR 1712–1814.) A CT scan showed nonobstructive kidney stones. (AR 1769.) She later complained of back pain, which was treated with pain medication. (AR 1771.) It was noted that she has "no difficulty ambulating." (AR 1771.) Bilateral back pain was observed on examination, with normal gait. (AR 1774, 1780.) An x-ray performed in June 2023 showed "[c]ongenital grade 1 spondylolisthesis of L5," but otherwise normal findings. (AR 2066.)

Plaintiff presented to the emergency department in July 2023 complaining of radiating lower back pain without relief from pain medication or muscle relaxants. (AR 2070.) She was ambulatory but "uncomfortable appearing." (AR 2071.) Tenderness to palpation in her lower lumbar spine was noted. (AR 2071.) An MRI was normal. (AR 2079–80.)

**B.      Plaintiff's Statement**

In February 2020, Plaintiff completed an adult function report. (AR 347–54.) She reported

5

that she is unable to stay in one position for any longer than 30 minutes and must switch positions between sitting, standing, and lying down. (AR 347.) She has no problem taking care of her activities of daily living. (AR 348.) Plaintiff stated that she can walk for 20 to 30 minutes before needing to rest for 10 to 20 minutes. (AR 352.)

**C.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on October 19, 2020, and again on reconsideration on April 5, 2021. (AR 17, 161–65, 168–73.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 174–208.) At a hearing on September 8, 2023, Plaintiff appeared with counsel via video and testified before an ALJ as to her alleged disabling conditions. (AR 48–71.)

   **1.    Plaintiff's Testimony**

Plaintiff testified she has constant lower back pain made worse with bending, lifting, twisting, walking, and sitting. (AR 60.) She reported difficulty standing or sitting for more than one hour at a time. (AR 60.) The maximum weight she could lift was 15 pounds. (AR 60.) She managed her pain with ice, a TENS unit, and over the counter medications. (AR 60.) Plaintiff testified that she has had in-home healthcare for almost the past 2.5 years, for 34 hours per week, including help with bathing, grooming, taking her to appointments, cleaning, laundry, food preparation, and shopping. (AR 67–69.)

   **2.    Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a customer complaint clerk. (AR 72.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 72.) The VE was also to assume this person is limited to a light exertional level and would also be limited in that she could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can frequently balance; occasionally stoop, kneel, crouching and crawl; and limited to occasional changes in tasks or demands. (AR 72–73.) The VE testified that such a person could perform Plaintiff's past work, and other light jobs in the national economy, such as folder, Dictionary of Operational Titles (DOT) code 369.687-018 with a specific vocational

preparation (SVP)[4] of 2; scrap sorter, DOT code 788.687-106 with an SVP of 2; and counter clerk, DOT code 249.366 010 with an SVP of 2.  (AR 73.)  With the additional limitations in a second hypothetical that the first hypothetical person would need a sit/stand option with off task less than 10% of the workday and a limitation to standing and walking four hours total in a workday, the VE testified that no past work would be available, but that the folder and scrap sorter occupations would remain, as well as the job of final assembler, DOT code 713.687-018 with an SVP of 2  (AR 73–74.)

The VE testified that if the second hypothetical person would be absent two or more days per month on average, there would be no work available.  (AR 74.)  The VE further testified that missing more than one day of work per month is work preclusive.  (AR 75.)  Finally, in a last hypothetical from the ALJ, the VE testified that if the first or second hypothetical person would be off task more than 15% of the time in a normal workday, such would be work preclusive, as 10% off task behavior is the "maximum allowable."  (AR 75.)  Plaintiff's attorney asked the VE whether if the first or second hypothetical person would need unscheduled work breaks at least three days per week for four to eight times per day for five to 10 minutes it would be work preclusive, the VE answered in the affirmative.  (AR 76.)

**D.     The ALJ's Decision**

In decision dated November 15, 2023, the ALJ concluded that Plaintiff was not disabled. (AR 17–35.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920.  (AR 19–34.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since October 7, 2018, the alleged onset date (step one).  (AR 20.)  At step two, the ALJ found Plaintiff's following impairments to be severe: cyclic vomiting/cannabis hyperemesis syndrome; gastritis/diverticulitis/colitis; lumbar degenerative disc disease/lumbago; obesity; depression; and anxiety.  (AR 20.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

7

Subpart P, Appendix 1 ("the Listings") (step three).  (AR 20–23, 27–29.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] if she stopped her substance use and applied the assessment at steps four and five.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she needs a sit/stand option, with off task less than 10% of the workday, and with standing and walking limited to four hours total in a workday.  She can occasionally climb, stoop, kneel, crouch, and crawl.  She can frequently balance.  She can tolerate occasional changes in tasks or demands.

(AR 29–31.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 29.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the local and national economies, specifically folder, scrap sorter, and final assembler (step five).  (AR 33–34.)  The ALJ concluded that because Plaintiff's substance use disorder is a contributing factor material to the determination of disability, Plaintiff was not disabled at any time from the alleged onset date through the date of the decision.  (AR 34 (citing 20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g) and 416.935).)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 24, 2024.  (AR 8–13.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to

the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he

burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted)

## IV.   DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her allegations of pain and physical dysfunction due to her low back pain and her allegations of anxiety and depression. (Doc. 11 at 8–18.) Defendant responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 13 at 4–15.) The Court agrees with Plaintiff that the ALJ improperly discredited her subjective symptom statements with respect to her back pain and will remand for further proceedings.

**A.   Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v.*

---

[6] The Court rejects Defendant's contention that a lesser legal standard applies. (*See* Doc. 13 at 5 n.1.)

11

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.    Analysis**

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 29.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with the medical record. (AR 29.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

In support of the conclusion that Plaintiff's complaints of back pain were "inconsistent" with the record, the ALJ stated:

> "[L]umbar imaging in the file is normal or mild. She has not required surgery for her back pain. As noted above, examinations show [Plaintiff] ambulates with a normal, unassisted gait and maintains 4/5 to 5/5 strength in all extremities. She also reported exercising, walking her dog, doing her activities of daily living, and doing tile work at her house.

(AR 31.) Thus, the ALJ purported to reject Plaintiff's subjective statements based upon inconsistencies with the objective medical record, her treatment, and her activities. The Court must determine whether these were clear and convincing reasons for discounting Plaintiff's statements.

### 1. Objective Medical Evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base their decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating her subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly, an ALJ may not "cherry-pick" medical evidence that favors disability without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

As noted above, the ALJ opined the objective medical record showed "normal or mild" lumbar imaging and that she "ambulates with a normal, unassisted gait and maintains 4/5 to 5/5 strength in all extremities." (AR 31.) However, a careful review of the record reveals the ALJ misrepresented the medical evidence. An October 2018 MRI of Plaintiff's lumbar spine showed a "pars defect of L5-S1." (AR 462–65.) Another MRI performed in February 2021 showed "***mild to moderate*** left and minimal right foraminal narrowing." (AR 769–70 (emphasis added).) Another MRI performed in March 2023 confirmed "***mild to moderate*** [n]arrowing of the right L4-5 and

13

bilateral L5-S1 neural foramina." (AR 2063–64 (emphasis added).)

There are also references in the record to Plaintiff's abnormal gait and her use of an assistive device. For example, in December 2019, Plaintiff exhibited an antalgic gait. (AR 518–19.) In December 2021, Plaintiff again exhibited an antalgic gait, and she was "[u]nable to heel walk or tip toe walk due to weakness and pain." (AR 1936.) A treatment record from February 2021 noted Plaintiff is ambulatory but uses a cane due to left extremity weakness. (AR 693–96.) This record undermines the ALJ's suggestion that Plaintiff's complaints of back pain were not substantiated by imaging studies or physical examination findings.[7] Moreover, the ALJ fails to explain how evidence of normal and, occasionally reduced, muscle strength is inconsistent with Plaintiff's complaints. *See Maldonado v. Comm'r of Soc. Sec.*, No. 1:20-CV-01506-EPG, 2022 WL 1138113, at *3 (E.D. Cal. Apr. 18, 2022) ("[W]hile it is true that Plaintiff had some normal physical examination findings relating to his strength, range of motion, sensation, gait, and reflexes, the ALJ failed to explain how any of these findings were inconsistent with Plaintiff's testimony, which generally alleged disabling pain in his feet, hands, and back.").

The Court is unable to find the ALJ met the burden to identify evidence in the record that conflicts with Plaintiff's statements concerning the severity of her back pain and symptoms. The purported inconsistencies with the objective medical record are not clear and convincing reasons to support the ALJ's decision.

### 2. Lack of Surgery

The ALJ next observed that Plaintiff "has not required surgery for her back pain." (AR 31.) However, in the absence of any citation by the ALJ to evidence in the record that any of Plaintiff's treating physicians had ever recommended back surgery, the failure to undergo back surgery does

---

[7] Additional objective medical evidence in the record, mentioned elsewhere in the ALJ's decision, further supports Plaintiff's subjective testimony. For example, a nerve biopsy was performed in July 2020, which showed severe length-dependent small fiber neuropathy. (AR 621, 663.) During physical examinations, Plaintiff demonstrated tenderness to palpation in May 2018 (AR 420), October 2018 (AR 408–09), October 2019 (AR 2221–22), December 2019 (AR 518–19), July 2020 (AR 607), August 2020 (AR 624), July 2022 (AR 1973), November 2022 (AR 1985), and July 2023 (AR 2071); decreased or abnormal range of motion in her lumbar spine in October 2018 (AR 408–09), December 2019 (AR 518–19), April 2020 (AR 671–72), August 2020 (AR 624), December 2020 (AR 652–53), July 2022 (AR 1973); positive Patrick and Reverse Thomas tests in April 2020 (AR 671–72) and December 2020 (AR 652–53); positive Kemps test in July 2022 (AR 1973); and positive straight leg raising tests in July 2022 (AR 1973) and November 2022 (AR 1985).

14

not constitute a clear and convincing reason for discrediting Plaintiff's excess pain and subjective symptom testimony.[8] *Bacelis v. Astrue*, No. CV 10-5148 RNB, 2011 WL 2015531, at *3 (C.D. Cal. May 23, 2011). *See also Pressley v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01672-PHX-DGC, 2021 WL 5195311, at *11 (D. Ariz. Nov. 9, 2021) ("The ALJ cites no authority to support her view that surgery is an available remedy to all back pain, or that nerve blocks and spinal injections are not aggressive treatment recommendations. Plaintiff's failure to have had surgery is not a clear and convincing reason to discredit her testimony.").

### 3.     Level of Activity

Finally, the ALJ pointed to Plaintiff's activity level as a reason to discredit her pain complaints. (AR 31.) An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements. *Burch*, 400 F.3d at 681. Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina*, 674 F.3d at 1112 (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").

The ALJ observed that Plaintiff "reported exercising, walking her dog, doing her activities of daily living, and doing tile work at her house." (AR 31.) However, the ALJ did not make any determination that these activities conflict with Plaintiff's other statements concerning her level of activity. For example, Plaintiff reported that she exercises and walks her dog for 20 minutes (AR

---

[8] To the extent that the ALJ suggests Plaintiff received only conservative treatment for her back pain, such is belied by the record. Plaintiff's treatment consisted of epidural injections, (AR 515–16, 655), trigger point injections (AR 408), medial branch blocks (AR 521–23, 645–46), and Norco, Tramadol, and other opioid medications (AR 649, 653, 2221–22). These treatment modalities have consistently been deemed not conservative. *See Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010) (treatment consisting of copious amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative). *See also Madrigal v. Berryhill,* No. CV 17-824-PLA, 2017 WL 5633028, at *6 (C.D. Cal. Nov. 21, 2017) ("[P]laintiff has been prescribed pain medications, including the narcotic medication Norco, has received spinal injections, and has been referred for a lap band surgery consultation, treatment that is not necessarily conservative."); *Shepard v. Colvin*, No. 1:14-CV-1166-SMS, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) ("Prior cases in the Ninth Circuit have found that treatment was conservative when the claimant's pain was adequately treated with over-the-counter medication and other minimal treatment," however where record reflected heavy reliance on Tramadol and Oxycodone and other prescriptions for pain, record did not support finding that treatment was "conservative") (internal citations omitted).

411) and performs tile work at her house on weekends (AR 607), which is not necessarily inconsistent with her statements that she has difficulty standing or sitting for longer than 20-30 minutes (AR 352) or for one hour (AR 60) at a time.

Furthermore, the record does not indicate that Plaintiff could—or did—perform any of the activities identified for a substantial part of each day. In fact, the ALJ overlooked Plaintiff's testimony that she can only perform her activities of daily living with the assistance of in-home healthcare, which she has had at 34 hours per week for approximately 2.5 years. (AR 67–69.) Thus, the activities identified do not constitute a clear and convincing reason to discount Plaintiff's statements concerning her back pain. *See Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

In sum, the Court finds that the ALJ failed to meet the burden to identify clear and convincing reasons supporting the adverse credibility determination, which were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds."[9] *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Court is unable to find the ALJ's decision is supported by substantial evidence in the record.

The error is not harmless. Had the ALJ credited Plaintiff's statements related to her back

---

[9] During their recitation of the medical evidence, the ALJ observed that Plaintiff had a year-long gap in treatment for low back pain, "attended eight visits [of physical therapy], with two cancellations and two no shows," and "was somewhat noncompliant with her home exercise program instructions." (AR 29, 30.) To the extent these references were meant as reasons to discredit Plaintiff's subjective testimony about her back pain—which is less than clear—they are not clear and convincing reasons to do so. An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SOC. SEC. RULING 16-3P TITLES II & XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, SSR 16-3P (S.S.A. Oct. 25, 2017). An ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id. See also Desiderio v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04058-PHX-BSB, 2019 WL 549458, at *10 (D. Ariz. Feb. 12, 2019) (finding that a one-year gap in treatment was insufficient to justify an ALJ discounting a plaintiff's symptom testimony where the ALJ did not inquire about the gaps or inconsistencies at the hearing, and cited to no evidence in the record that may explain the gaps). Here, like the ALJ in *Desiderio*, who did not inquire about treatment gaps during the hearing or cite to evidence in the record that may explain the gaps, the ALJ in this case provided no context to Plaintiff's one-year gap, her lack of attendance at physical therapy sessions, or her alleged "somewhat noncompliance" with home exercises. Nor did the ALJ ask Plaintiff questions about her treatment history during the administrative hearing, as is recommended by the regulations. What is more, the medical record shows that Plaintiff cancelled one physical therapy appointment because she was out of town, and another due to a "family emergency." (AR 616.)

pain and assessed a more restrictive RFC, the disability determination may have been different. (*See, e.g.*, AR 75–76 (VE testimony that being off task more than 10% of the workday, missing more than one day of work per month, or requiring multiple unscheduled work breaks at least three days per week is work preclusive.).) Thus, the error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

## C.     Remand for Further Proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for further proceedings. (Doc. 11 at 18.)

The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the RFC determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Thus, a remand for further proceedings to properly assess Plaintiff's subjective symptom statements is appropriate in this action.[10]

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further

---

[10] Because further proceedings will necessitate the re-evaluation of Plaintiff's symptom statements as a whole, the Court does not reach the issue of the ALJ's treatment of Plaintiff's allegations of mental impairments due to anxiety and depression. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

17

proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Dallas Taylor Odenwelder and against Defendant Michelle King, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **January 29, 2025**                     /s/ *Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE